five miles from Port Huron, towed her back to Port Huron, and the next day took her and another barge, and started again for Bay City. On reaching Saginaw Bay, another storm arose, the Poland's line again parted, and left her adrift. The tug then went into Bay City for more coal, and came out the next day to look after the barges. Just outside of Bay City, Mr. Clark, the original claimant and owner of the Poland, got on to the propeller from the tug, went up to Port Hope, where they learned that the barge Poland had gotten back to Port Huron, and the conversation sought to be given in evidence was then had. It is claimed by the libelant Graves, with whom the conversation was had, that, the wind being then ahead, he told the owner of the Poland that he would rather give him what he had done than go down after her to Port Huron; but Clark said he felt as if he ought to pay his tow bill; that he told the owner it would not pay him to go to Port Huron, and tow her up there for such a bill. The owner replied, he felt as if he ought to pay his tow bill, "after I had done what I had to get her there," and if he would go to Port Huron after his barge, and tow her to Bay City, and not tow anything else, he would give him another hundred dollars, which would make the bill two hundred instead of one hundred dollars. Another witness, not a party to the suit, testified that there was a conversation between these parties, and that the owner of the Poland told him "there was an extra." "They were to pay extra, but he did not understand what amount." As matter of fact, the tug did go to Port Huron, took the barge in tow, and towed her to Bay City alone, and delivered her there in safety. He also testifies that there was considerable reluctance on the part of the owner of the tug in undertaking to tow the Poland again. After the barge arrived at Bay City, a bill for two hundred dollars was made out; and it is also claimed by another party, libelant, that $102.50 was paid upon this bill, and that there now remains a balance of $97.50 due him. Libelants now request to be sworn as to conversation with the owner of the barge at Port Hope, and to the payment of $102.50. In determining this question, I consider myself at liberty to look, not only at the petition itself, but at all the testimony which was given at a former hearing, including the testimony of the parties themselves, which was ultimately ruled out. It is manifest that the service performed by the tug was a very arduous and meritorious one. In endeavoring to carry out his first contract, the tow was overtaken by two storms. The Poland's line parted twice, without any fault of the tug, and she was left adrift upon the lake. To have ventured, with other barges, to turn around and attempt to pick up a barge under such circumstances, would have been extremely hazardous, not only for the tug, but

for the other barges, and I think that no prudent tug-master would have ventured to do this in his encumbered condition. In the case of The Clematis [Case No. 2,876] it was held by this court that the duty of turning back and endeavoring to pick up a tow of barges under those circumstances was a matter which rested to a great extent in the judgment and discretion of the master, and that a court would not interfere with or reverse that judgment if fairly exercised, although the burden of proof was upon the tug to show that his action was justified by the exigencies of the case. I question seriously whether the intervening circumstances were not such as to justify the master of the tug in treating his original contract as abandoned, and whether, if he had then succeeded in picking up the barge after the line was broken, he would not have been entitled to compensation in the nature of salvage. This view is supported by several recent English cases. The J. C. Potter, 3 Marit. Law Cas. 506; The Minnehaha, 1 Lush. 348; The Pericles, Brown. & L. 81; The Galatea, Swab. 350; The White Star, L. R. 1 Adm. & Ecc. 70; The Waverley, 1 Marit. Law Cas. (N. S.) 47. The proposed testimony tends to show that the original contract was abandoned by mutual consent; that a new contract was made, by which the tug agreed to go to Port Huron, and tow the barge alone to Bay City for $200.

The circumstances seem to me to indicate as quite probable that such contract was made. Libelants produce a bill for $200, upon which there is an endorsement, in writing, of a payment of $102.50. The claimant admits the payment of $100, but objects to the proof of the payment of a larger amount, on the ground that it was a transaction with the deceased. It seems to me highly improbable that the payment of a greater amount than the contract called for upon the theory of the claimant would have been made if the original contract had been considered still in force. It also seems to me improbable that libelants would admit a larger payment to have been made than was in fact made; and the endorsement upon the draft, though unexplained, seems to support his theory. It is also claimed by libelants that the owner of the barge admitted to them more than once the correctness of the account as rendered.

Under all the circumstances of the case, I am satisfied that justice requires that the libelants should be permitted to testify in their own behalf as to transactions with the deceased, and an order will be entered to that effect.

---

## Case No. 11,243.

### POLAND v. GLYN.

[Cited in Doan v. Compton, Case No. 3,940, and in Arnold v. Maynard. Id. 561. See 2 Dowl. & R. 310, and 4 Bing. 22, note.]